**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RYAN RAMER and JULIE MORALES individually, and on behalf of other similarly situated individuals,** *Plaintiffs* | : | |
| **v.** | : | **C.A. NO.: 1:19-cv-00218-JJM-LDA** |
| **UTGR, INC., d/b/a TWIN RIVER CASINO, alias,** *Defendant* | : | |

# MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES

## I. Introduction

Now come the Lead Plaintiffs Ryan Ramer and Julie Morales ("Lead Plaintiffs"), individually and on behalf of Opt-in Plaintiffs in the above-captioned collective action,[1] and do hereby submit this within Memorandum of Law in Support of Class Counsel's Application for Attorneys' Fees.

Class Counsel petitions this Court for an award of counsel fees and costs in the amount of **$94,805.00**, of which **$80,000.00** will be paid by Defendant per the Proposed Settlement Agreement and $**14,805.00** will be paid by Plaintiffs from the common fund of **$235,000.00** via a **six and three-tenths percent (6.3%)** reduction pro-rata, for services rendered by Class Counsel in this action, all of which is payable from the total gross settlement of **$315,000.00.**

As grounds therefore and in support thereof, Plaintiffs note that the Parties have reached a Proposed Settlement Agreement in resolution of Plaintiffs state and federal wage and hour claims and have filed a Joint Motion for Final Collective Action Class Certification and

[1] As used herein, the term "Plaintiffs" collectively refers to the Lead Plaintiffs and those Plaintiffs who have opted-into this lawsuit.

Approval of Proposed Collective Class Settlement Agreement and Supporting Memorandum of Law ("Joint Motion for Approval") with this Court simultaneously herewith.

As a result of Class Counsel's efforts in negotiating a settlement in this case, the relief provided to class members is substantial. Class Counsel secured a substantial common fund in the amount of **$235,000.00** to compensate the Plaintiffs in this case, which represents approximately 85% of the Plaintiffs' total possible maximum recovery, with individual damages reduced by only 15%. Moreover, Class Counsel was also able to secure the sum of $80,000.00, to be paid by Defendant UTGR, Inc. ("Defendant"), which will be allocated towards Class Counsel's fees and costs and thus result in a reduced contingent fee amount chargeable to Plaintiffs of only six and three-tenths percent (6.3%). Notably, this means that the effective contingent fee amount sought by Class Counsel as a percentage of the common fund is significantly less than the forty percent (40%) agreed to by Plaintiffs.

Accordingly, as set forth below, Plaintiffs submit that the attorneys' fees' and costs requested by Class Counsel, amounting to about six and three-tenths percent (6.3%) of the common fund of **$235,000.00** requested by Class Counsel plus the **$80,000.00** attorneys' fees component to be paid by the Defendant, is fair and reasonable.

## II. Background

On April 26, 2019, the Lead Plaintiffs, all Table Games Supervisors employed by the Defendant, brought this lawsuit against Defendant UTGR, Inc. ("Defendant") on behalf of themselves and other similarly situated individuals employed or formerly employed by Defendant as Floor Supervisors and Floor Managers. The Lead Plaintiffs allege that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the Rhode Island Payment of Wages Act ("RIPWA"), R.I. Gen. Laws § 28-12-1, *et seq.* and § 28-14-1, *et. seq*. by

not paying them overtime compensation at the rate of one and one-half (1 ½) times their regular hourly rate of pay for hours worked in excess of forty (40) hours in a work week ("overtime pay") beginning from three (3) years prior to the filing of the Complaint until the present. Complaint (ECF No. 1) ¶¶116-118 ("Compl."). In addition to unpaid overtime compensation, the Lead Plaintiffs also seek liquidated damages, punitive damages, and attorney's fees and costs. *Id*. at Section VI, ¶¶4-8.

On or about July 22, 2019, this Honorable Court granted the Lead Plaintiffs' Motion for Conditional Certification and on July 30, 2019 approved a period of four (4) months for other Floor Supervisors and Floor Managers employed by Defendant to opt-into this collective action. In total, ninety-six (96) individuals timely opted into this collective action by returning executed "Consent to Sue" forms for a total of ninety-eight (98) Plaintiffs.

By opting into this Collective Action, Plaintiffs agreed to "become a plaintiff in this lawsuit" and agreed "to be bound by any judgment of the Court." *See* Plaintiff Consent to Sue Form [ECF Nos. 2, 3, 6-28, 30, 31, 34-41, 45-48, 50-59, 61, 63-67, 70, 71, 74, 75, 77-80, 83-104, 106-108, 111-120]. Additionally, by opting in, Plaintiffs agreed to the following attorneys' fee provision:

> I understand that if Plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment amount on a pro rata basis with all other plaintiffs. I understand that the attorneys may petition the court for an award of fees and costs to be paid by Defendant on my behalf. I understand that the fees retained by the attorneys will be forty percent (40%) of my gross settlement or judgment amount, provided that any counsel fees paid by the Defendant by either agreement or award of the Court will be credited against the contingent fee owed.

*Id*.

***Discovery and Settlement Discussions***

After Conditional Certification was granted and the Opt-In period ended, the Parties engaged in written discovery wherein Defendant submitted payroll and time records ("time records") for all ninety-eight (98) Plaintiffs for time periods ranging from Pay Date April 26, 2016 until November 18, 2018. The payroll records were presented to each Plaintiff for review as to the accuracy thereof and all inaccuracies reported by Plaintiffs were brought to Defendant's attention for clarification and for Defendant to supplement with updated records. Defendant promptly addressed all reported inaccuracies and provided supplemental payroll records accordingly.

Thereafter, the Parties, by and through counsel, diligently and in good faith engaged in discovery and settlement discussions beginning around approximately March 2020 until on or about January 14, 2021. The settlement process that the Parties engaged in consisted of approximately ten (10) months of: 1) detailed analyses and calculations of Plaintiffs' time records and damages; 2) detailed oral, written, and in-person discussions regarding liability; 3) detailed oral, written, and in-person discussions regarding Plaintiffs' damages; 4) detailed oral, written, and in-person negotiations regarding the merits of the case, settlement amount, and settlement details, including liquidated damages, Lead Plaintiffs' incentives, and payment of attorneys' fees. Throughout this process, the Lead Plaintiffs worked closely with Class Counsel in order to address concerns and achieve a fair and reasonable settlement in the best interest of all Plaintiffs.

On or about February 12, 2021 after almost ten (10) months of detailed settlement discussions based upon review of the payroll records, applicable law, and the facts of the case,

the Parties reached the Proposed Settlement Agreement detailed in and attached as **Exhibit A to the Joint Motion for Approval** filed simultaneously herewith.

On February 15, 2021, Class Counsel emailed the details of the Proposed Settlement Agreement to all Plaintiffs and provided all Plaintiffs with an opportunity to ask questions and object to the terms of the Proposed Settlement Agreement. *Affidavit of Class Counsel Chloe Davis, Esq.* ("Aff. CAD") **(Exhibit B to Joint Motion for Approval**) at ¶¶5-10. A number of Plaintiffs made inquiries that were timely addressed and answered, and only one Plaintiff claimed to disapprove without explanation the terms of the Proposed Settlement Agreement. *Id.* at ¶¶9-10. Class Counsel has also served a copy of the within Application to all Plaintiffs via electronic mail.

***Summary of Proposed Settlement Agreement***[2]

The Proposed Settlement Agreement proposes the following terms and payments in exchange for a full release of State and Federal wage and hour claims relating to the facts asserted in the Complaint by each Plaintiff:

1. The Proposed Settlement Agreement provides for a gross settlement amount of $315,000, from which each Plaintiff will be paid overtime pay at their respective hourly rates for time worked each workweek in excess of forty (40) hours from April 26, 2016 until November 18, 2018, pursuant to the formula set forth in paragraphs 3 and 4 below. **Exhibit A to Joint Motion for Approval** at ¶1.

2. In exchange, each Plaintiff will execute the Proposed Settlement Agreement, which contains a release of any and all FLSA and RIPWA claims arising from the facts alleged in the Complaint. *Id*.

3. The Proposed Settlement Agreement can be broken up into two different categories:

[2] The Parties note that Defendant has changed its pay practices as of November 18, 2018 wherein all Floor Supervisors and Floor Managers are now paid on a hourly basis and eligible for overtime pay for hours worked over forty (40) hours per week. Accordingly, the Proposed Settlement Agreement, if approved, brings finality to the issue of alleged FLSA violations set forth in the Collective Action Complaint.

a. Unpaid overtime pay for working over forty (40) hours in any given workweek;

b. Additional compensation for unpaid overtime pay for seven (7) Plaintiffs who participated in dealer training while not being swiped-in in excess of 40 hours during that period; and,

c. Service/Incentive Award paid to the two Lead Plaintiffs in the amount of $3,300 each.

*Id*. at ¶¶2(a)(i) – 2(a)(v).

4. As to the first category, Defendant will pay 85% of the alleged unpaid overtime ***PLUS*** liquidated damages in an equal amount. *Id*. at ¶2(a)(ii).

5. With respect to tax allocation, the Proposed Settlement Agreement provides that Plaintiffs' portions of the settlement proceeds, after reduction for attorneys' fees, will be disbursed and allocated as follows:

a. Plaintiffs will receive their allocated portion of their unpaid wages settlement proceeds plus any amount allocated for dealer training in the form of a payroll check from which payroll taxes will be deducted and a net check issued to each Plaintiff. This check will represent Plaintiffs' compromised unpaid wages. Plaintiffs will receive a W2 form for this check from Defendant.

b. Plaintiffs will also receive liquidated damages in an amount equal to their allocated portion of their unpaid wages, plus any service/incentive award in the case of the Lead Plaintiffs, as a gross sum check from which no payroll taxes will be deducted. The proceeds from this check represents Plaintiffs' liquidated damages and is not subject to payroll taxes, and for which Plaintiffs will receive a 1099-Box 3 (Other Income) form from Defendant.

*Id*. at ¶2(c).

6. Defendant will pay counsel fees in the amount of $80,000.00 towards the agreed-upon forty percent (40%) contingent Class Counsel fees, such that only six and three-tenths percent (6.3%) will be deducted from the total amount of payment due to Plaintiffs for the remainder of Class Counsel fees. *Id*. at ¶1(b).

***Attorneys' Fees and Expense of Class Counsel***

With respect to Class Counsel's Application, Defendant has agreed to pay **$80,000.00** towards the Plaintiffs' attorneys' fees and costs, which will reduce the contingent fee percentage

chargeable to Plaintiffs b**y over thirty-three percent (33%).** Accordingly, the total amount paid out pursuant to the Proposed Settlement Agreement to each Plaintiff will be reduced by a contingent amount of only **six and three-tenths percent (6.3%)**. ***The Parties note that, as a practical matter, such allocation will result in the Plaintiffs receiving the full amount of their claimed unpaid wages, plus liquidated damages equal to about seventy (70%) of those unpaid wages.***

## III. <u>Argument</u>

Class Counsel petitions this Court for an award of attorneys' fees and costs totaling **$94,805.00**, of which **$80,000.00** will be paid by Defendant per the Proposed Settlement Agreement and $**14,805.00**, will be paid by Plaintiffs from the common fund of **$235,000.00** via a **six and three-tenths percent (6.3%)** reduction pro-rata. In support of his application for attorneys' fees, Lead Class Counsel has submitted an affidavit attesting to the time spent on this matter, the costs expended on behalf of the Plaintiffs, the prevailing market rate/agreements for FLSA/RIPWA matters, and the fairness and reasonableness of the fees and costs sought. *See* Affidavit of Richard A. Sinapi ("Aff. Sinapi"), attached hereto as **Exhibit 1**. Moreover, Class Counsel also presents an affidavit from a disinterested attorney, Lawrence L Goldberg, Esq. who handles fee shifting cases not unlike the one in the case at bar and supports the fees and costs sought by Class Counsel and approved by Plaintiffs. *See* Affidavit of Lawrence L. Goldberg, attached hereto as **Exhibit 2**.

As shown below, the attorneys' fees requested are fair, reasonable, and at or below the percentage range awarded by Courts in similar actions.

### A. Standard for Awarding Attorneys' Fees

"[W]here a proposed settlement of FLSA claims includes the payment of attorney's fees,

the court must also assess the reasonableness of the fee award." *Binienda v. Atwells Realty Corp.*, No. CV 15-253 WES, 2018 WL 6266784, at *1 (D.R.I. Nov. 30, 2018).

**B. Percentage of Common Fund as an Award of Attorneys Fees**

The First Circuit has expressly approved of and allowed awards of attorneys' fees in class actions as a percentage of the common fund created for settlement of the class action. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (percentage of fund method in common fund cases is "the prevailing praxis" and has "distinct advantages that the POF method can bring to bear in such cases"); *In re Cabletron Systems, Inc. Securities Litigation*, 239 F.R.D. 30, 37-38 (D. N.H. 2006) ("The Court is persuaded, by the holding of *Thirteen Appeals* and the emerging trend in district courts nationwide, that the better approach to awarding attorneys' fees is the POF method."); *Nilsen v. York County*, 400 F. Supp. 2d 266, 270-71 (D. Me. 2005) (percentage of recovery method is the prevailing method for common fund cases); *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 77 (D. Mass. 2005) (approving the percentage of fund method to a common fund case); s*ee also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine'…a reasonable fee is based on a percentage of the fund bestowed on the class"). Further, a majority of the circuit courts have also adopted the percentage of the fund method.[3]

[3] *See, e.g., Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 56 F.3d 768, 821-22 (3d Cir. 1995); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 564-65 (7th Cir. 1994); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) ("We have approved the percentage-of recovery methodology to evaluate attorneys' fees in a common-fund settlement"); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994) (holding that percentage of the fund method should have been used to award fees); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of the- fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

"In sum, there is a strong consensus… across the country… in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002). Aff. Sinapi ¶8; Aff. Goldberg ¶9. This is primarily because "using the POF method in common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement." *Thirteen Appeals*, 56 F.3d at 307; Aff. Sinapi ¶8; Aff. Goldberg ¶9. Therefore, courts routinely award premiums to counsel who settle cases early. *See Thirteen Appeals*, 56 F.3d at 307.

**C. Class Counsel Achieved Excellent Results and Relief on Behalf of Plaintiffs**

In *Hensley v. Eckerhart*, the Supreme Court held the "most critical factor" in determining the reasonableness of an attorneys' fees award is "the degree of success obtained [within the litigation]." 461 U.S. 424, 436, (1983). In the instant case, there is no question as to the level of success as addressed below.

Class Counsel has expanded substantial times and resources 1) investigating Plaintiffs' claims; 2) conducting legal research regarding Plaintiffs' claims; 3) drafting a detailed Collective Action Complaint; 4) drafting a motion for conditional certification, memorandum of law in support, and opt-in notices/consent form; 5) arguing the motion for conditional certification; 6) negotiating the language of the Notice to the prospective class and details of the conditional certification sought with opposing counsel per this Court's order; 7) mailing notice to the prospective class; 8) receiving and submitting ninety-six (96) opt-in notices with this Court; 9) engaging in written discovery and document review; 10) diligently communicating with Plaintiffs regarding the time records submitted by Defendant; 11) calculating Plaintiffs' alleged

overtime damages; 12) engaging in close to ten (10) months of settlement discussions; and, 13) negotiating the Proposed Settlement Agreement. Thereafter, Class Counsel has expanded additional time and resources drafting the Parties' **Joint Motion for Approval** filed simultaneously herewith and this Application for Attorneys' fees.

Class Counsel diligently and in good faith engaged in months of settlement discussions beginning around March 2020 until on or about February 12, 2021. The settlement process that the parties engaged in consisted of approximately eleven (11) months of: 1) detailed analyses and calculations of Plaintiffs' time records and damages; 2) detailed oral, written, and in-person discussions regarding liability; 3) detailed oral, written, and in-person discussions regarding Plaintiffs' damages; 4) detailed oral, written, and in-person negotiations regarding the merits of the case, settlement amount, and settlement details, including liquidated damages, Lead Plaintiffs' incentives, and payment of attorneys' fees. Throughout this process, the Lead Plaintiffs worked closely with Class Counsel in order to address concerns and achieve a fair and reasonable settlement in the best interest of all Plaintiffs.

As a result of Class Counsel's efforts in negotiating a settlement in this case, the relief provided to class members is substantial. Class Counsel secured a substantial common fund in the amount of **$235,000** to compensate the Plaintiffs in this case, including a **$6,600.00** premium for the Lead Plaintiffs, which represents approximately 85% of the Plaintiffs' possible maximum recovery, with individual damages reduced by only 15%. Moreover, Class Counsel was also able to secure an amount of **$80,000.00**, to be paid by Defendant, which will be allocated towards Class Counsel's fees and costs and thus result in a contingent fee amount chargeable to Plaintiffs of only **six and three-tenths percent (6.3%)**. Notably, this means that the contingent fee amount sought by Class Counsel is significantly less than the forty percent (40%) agreed to

by Plaintiffs. Moreover, notwithstanding the percentage fee reduction from the common fund, Plaintiffs are still recovering an amount equivalent to the full amount of claimed wages plus about 70% of the applicable liquidated damages. Aff. Sinapi ¶21.

**D. The Percentage Requested is Fair, Reasonable, and Below the Percentage Range Awarded by Courts**

**a. Range of Percentage Awards**

Class Counsel in this case seeks a fee award of only **about six and three-tenths percent (6.3%)** of the monetary relief from the common fund recovered for the class. This request is far less than the percentage typically awarded. *See Freeman v. Total Sec. Mgmt.-Wisconsin, LLC*, No. 12-CV-461-WMC, 2014 WL 4829480, at *2 (W.D. Wis. Sept. 29, 2014) ("[T]he court finds an award of 50% of the total settlement award, plus costs, to be a reasonable fee award**.**); *Kiefer v. Moran Foods, LLC*, No. 12-CV-756 WGY, 2014 WL 3882504, at *9 (D. Conn. Aug. 5, 2014)(Approving award of one-third of the common fund); *Woolfson v. Caregroup, Inc.*, No. 1:09-CV-11464, 2010 WL 10063268, at *3 (D. Mass. Sept. 13, 2010) ("An award of attorneys' fees in the amount of $2,805,000.00, which represents 33% of the total settlement amount, is approved. Such award is reasonable in light of the effort expended and risks undertaken by Class Counsel, and the results of such efforts including the ultimate recovery obtained."); *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 383-384 (W.D. Pa. 2002) (awarding 38% of the fund as fees, exclusive of expenses and 41% with expenses); *In re Tex. Prison Litig.*, 191 F.R.D. 164, 178 (W.D. Mo. 2000) (awarding 49.5% of the fund as fees and expenses).[4] Accordingly, the percentage requested by Class Counsel is well within the range of percentages awarded by courts in similar actions and therefore reasonable in this regard.

[4] *See also, e.g.*, *In re Crazy Eddie Secs. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (awarding 33.8% of the fund as fees and 38.6% of the fund as fees and expenses); *Greene v. Emersons Ltd*., No. 76-2178, 1987 WL 11558 (S.D.N.Y. May 20, 1987) (awarding 46.2% of the common fund as fees); *Howes v. Atkins*, 668 F. Supp. 1021 (E.D.

**b. Requested Fee is Fair and Reasonable**

While valuing Class Counsel's services, it should be noted that under the relevant legal standard, the appropriate perspective to consider is how the parties valued the services to be provided at the commencement of the representation. Nothing could be more indicative of the market-rate for Class Counsel's services than the actual agreement entered into between Class Counsel and the Lead Plaintiffs, and indeed all Plaintiffs via the Consent to Sue form, at the beginning stages of this case. *See* Reagan W. Silber & Frank E. Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 549 (1998) ("If named plaintiffs have agreed to pay a one-third contingent fee, that is powerful evidence of a reasonable fee.").

Here, all Plaintiffs independently considered the issue and decided that contingency fees of 40% were appropriate for this case. However, through Class Counsel's negotiations, the fee sought here is even *less than* that previously-agreed amount at six and three-tenths percent (6.3%) of the common fund pro-rata. Moreover, ***"Class Counsel's requested fee is also reasonable because Class Counsel will continue to perform work on this matter after final approval is granted."*** Kiefer, 2014 WL 3882504, at *9 (citing Parker v. Jekyll & Hyde Entm't Holdings, LLC, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time")). Accordingly, the counsel fees sought are fair and reasonable. In this case, among other things, Class Counsel must notify Plaintiffs of the pending **Joint Motion for Approval** and **Class Counsel's Application for Attorney's Fees,** distribute and obtain executed Settlement

---

Ky. 1987) (awarding 40% of the fund as fees); *cf. Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714 (E.D. La. 2008) (noting that a 25% fee in a wage claim class settlement was "lower than the case law would support").

Agreements and Releases from all Plaintiffs, receive and distribute the settlement payments to Plaintiffs, and attend to final dismissal of the action.

Additionally, with respect to the work performed by Class Counsel through **February 28, 2021** in achieving the Proposed Settlement Agreement described above, Class Counsel expended approximately **414.50** hours which amounts to almost **$106,000.00** in time expended at the lodestar rate (plus costs of just over **$1,100.00)**, in zealously advocating for Plaintiffs and their best interest. Indeed, Class Counsel's requested fee is also reasonable because Class Counsel will continue to perform work on this matter after final approval is granted. The additional work to bring this matter to closure includes time spent completing and revising all the pleadings related to final certification and settlement and counsel fee approval, obtaining final court approval of the settlement, implementing the Proposed Settlement Agreement, collecting and distributing settlement funds, and dealing with any other issues that may arise. Aff. Sinapi ¶¶22-23; *see Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). Accordingly, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *Kiefer v. Moran Foods, LLC,* No. 12-CV-756 WGY, 2014 WL 3882504, at *9 (D. Conn. Aug. 5, 2014). Indeed, Class Counsel estimates that it will expend between 25-75 additional hours between March 1, 2021 and when this matter is finally concluded. Aff. Sinapi ¶¶22-23.

Moreover, while "the First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee," *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005), Plaintiffs note that the percentage fee requested is less than the amount of time expended to date in this matter. Aff. Sinapi ¶¶19-20; Aff. Goldberg ¶¶14. Moreover, Class Counsel estimates that anywhere between 25 to 75 hours of firm time will be required to achieve final resolution and closure of this matter; as such, Plaintiff's counsel will expend even more time in excess of the fee award requested. Aff. Sinapi ¶23. Indeed, "'Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.' " *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-CV-00738-RNC, 2014 WL 3778211, at *7–8 (D. Conn. July 31, 2014) (citation omitted) (compiling cases).

Last, "'in an individual FLSA action where the parties settled on the fee through negotiation, there is 'a greater range of reasonableness for approving attorney's fees.'" *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 261 (D. Mass. 2015) (citation omitted). Accordingly, Plaintiffs respectfully submit that the requested attorneys' fees and costs sought are fair and reasonable.

**c. Prevailing Market Rates and Skills of Attorneys Involved**

"[T]he object in awarding a reasonable attorney's fee . . . is to simulate the market . . . . class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." I*n re Continental Ill. Secs. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (Posner, J.); *see also Thirteen Appeals*, 56 F.3d at 307. Here, Class Counsel has presented his own affidavit as well as the affidavit of Attorney Lawrence Goldberg, a seasoned litigator who handles fee shifting cases not unlike the one in the case at bar,

attesting to the fact that the fee contingent fee arrangement in this matter reflects the amount routinely charged by other law firms handling FLSA class actions at 40% and is substantially less than the prevailing market rate at 6.3%. This is due in large part to the risk, novelty, and complexity of such actions. Aff. Sinapi ¶¶7-9; Aff. Goldberg ¶¶8-15.

Additionally, lead Class Counsel, Richard A. Sinapi, is an experienced employment law litigator who has developed particular expertise with respect to FLSA and Collective Action matters and has over thirty-five years of experience in practicing law in this jurisdiction. Aff. Sinapi ¶¶1-2, 5. Further, the firm's attorneys and paralegals are generally well trained and skilled and experienced in the practice of wage and hour actions. Aff. Sinapi ¶¶1-5; Aff. Goldberg ¶¶4-7. As demonstrated by the results and supported by affidavit, Class Counsel used their backgrounds to achieve an excellent result for their clients here.

**d. Substantial Risk Undertaken by Class Counsel**

Additionally, wage and hour cases such as the one here, are complex, difficult, litigation with no guarantee of compensation at the end. Aff. Sinapi ¶9. Indeed, compared to other litigation, attorneys representing workers in wage and hour matters on a contingency basis incur *all* risk with the prospect of losing and receiving no compensation. *See Freeman*, 2014 WL 4829480, at *2 (W.D. Wis. Sept. 29, 2014) ("plaintiffs' counsel took on this litigation understanding that there are inherent risks in representing plaintiffs on a contingency basis…Even after the significant risks of an adverse result at trial, counsel contracted to receive 40% of the gross award, not 60%, and this case did not advance to trial….. [T]he court finds an award of 50% of the total settlement award, plus costs, to be a reasonable fee award.); *Kiefer*, 2014 WL 3882504, at *9 (D. Conn. Aug. 5, 2014)( The fact that "[I]n Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for one-third of a class-wide

recovery and that they would pay Class Counsel one-third of any individual recovery…[and] [n]o Class Member objected to Class Counsel's request for one-third of the fund… provides support for Class Counsel's fee request.”); *Woolfson*, 2010 WL 10063268, at *3 (D. Mass. Sept. 13, 2010) (“An award of attorneys' fees in the amount of $2,805,000.00, which represents 33% of the total settlement amount, is approved. Such award is reasonable in light of the effort expended and risks undertaken by Class Counsel, and the results of such efforts including the ultimate recovery obtained.”). Moreover, the economics of taking on the risk, novelty, and complexity of such actions demands a premium in order to induce a sufficient pool of competent attorneys to bring such actions, which are relatively rare, particularly in this jurisdiction. Aff. Sinapi ¶¶6-9; Aff. Goldberg ¶¶11-12, 15. Accordingly, taking into consideration the nature of this action and the substantial risk taken by Class Counsel, the attorneys’ fees requested are fair and reasonable. Aff. Sinapi ¶27; Aff. Goldberg ¶¶10-15.

## IV. Conclusion

For the reasons set forth above, Plaintiffs respectfully requests that this Court award Class Counsel the requested counsel fees and costs incurred in achieving a successful result, as set forth in his Application for an Award of Attorney’s Fees filed simultaneously herewith.

Respectfully Submitted,
**Plaintiffs,**
By their attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

**Dated: March 9, 2021**

**/s/ Richard A. Sinapi**
**Richard A. Sinapi, Esq. (#2977)**
**Chloe A. Davis, Esq. (#9334)**
2374 Post Road, Suite 201
Warwick, RI 02886
Phone: (401) 739-9690; FAX: (401) 739-9040
Email: ras@sinapilaw.com; cad@sinapilaw.com

**CERTIFICATION**

**Michael D. Chittick, Esq.**
**Ali Khorsand, Esq.**
**Adler Pollock & Sheehan, P.C.**
One Citizens Plaza, 8th Floor
Providence, RI 02903
Mchittick@apslaw.com
akhorsand@apslaw.com

I hereby certify that on **March 9, 2021**, a true copy of the within was filed electronically via the Court's CM/ECF System. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and the filing is available for viewing and downloading from the Court's CM/ECF System.

I also certify that on **March 9, 2021,** a true copy of the within document was served electronically via email to all Plaintiffs in this action.

**/s/ Richard A. Sinapi**